## GEORGIA RAILROAD & BANKING COMPANY *v.* MOORE.

The evidence was insufficient to show that the plaintiff's injury was attributable to the running of the cars of the railroad company, or to the act of any person in the service of the company, as alleged in the petition.

NOVEMBER 16, 1916.

Action for damages. Before Judge Walker. Warren superior court. September 25, 1915.

C. M. Moore, a passenger, was struck by a rock thrown through the window of the toilet-room of the car. He alleged that he was thereby injured, in the following circumstances: The train upon which he was riding was passing, at the station Camak, a coal-chute, the timber supports upon which the flooring of the chute rested being in close proximity to the main railroad-track; and "said timbers referred to in the said coal-chute extended upward a sufficient height to bring the floor of said chute referred to above the upper end of the said passenger-car window, and that the said floor referred to herein is so arranged that cars loaded with coal are placed upon the said chute, unloaded upon the floor of said chute, and by hand reloaded in a hopper-bin coal dump-cart placed upon two wheels, and that said loaded dump-carts are used to convey coal from the floor of said chute to the front end of the same, which faces the main line of defendant, where the said dump-carts are loaded and placed in a position so that the front or scoop end of the same are extended over the track, main line, and train of defendant a sufficient distance and in a position that when it is necessary to take coal the said carts are tipped upward and dumped into the tender of the engine and train, which is placed or stopped in front of said dump-cart for the purpose of taking coal. . . The agents and servants of defendant load these dump-carts referred to daily, and place a large number of said carts at the front end of said chute, where they are left loaded, standing in readiness to be placed into the tender of any train passing said chute, which may need a supply of coal. . . At the time of the injury there were a number of dump-carts referred to, loaded with coal, standing on the front of said coal-chute in position to be dumped into the tender of any train that might stop for coal, and that the front end of said dump-carts extended out and over the track and train as herein shown, and over the car in which your petitioner was then riding, a sufficient distance to have dumped coal upon said car. . . That the said train upon which he was a passenger at the time of injury was moving about ten to fifteen miles an hour; that said train consisted of an engine and six or seven cars; and that as the direct result of the vibration and jar of the timber supports to said coal-

chute, said jar and vibration being caused by the running of train No. 3 then passing the said chute, and as the direct result of the fact that the said dump-carts, as herein shown, were carelessly loaded with coal and rock, and carelessly left overhanging the track or train of and by defendant; that the said car was so situated and constructed that your petitioner was obliged to pass the chute directly under the outer edge of the floor or the scoop end of the dump-carts referred to, and was thereby subjected to the danger of the falling rock and coal, as herein shown. . . The rock and coal referred to were shaken from the scoop end of the said dump-carts as herein shown, and negligently allowed to fall upon and injure your petitioner, which was shaken off, as herein shown, from the said dump-cart where the said cart had been negligently loaded, and had been negligently left down and upon the roof of the car in which your petitioner was then riding; that said rock and pieces of coal in turn fell from the roof or top of the said passenger-car, struck the side of the coal-chute, or one of its timber supports, which fell with a rebound, causing the said rock and pieces of coal to fall against and into the toilet-room window, breaking the glass of said window, which injured your petitioner as herein shown." The railroad company contended in its pleading that the rock was thrown by some lawless person over whom it had no control. The plaintiff testified that he was hit by a rock or stone weighing about three pounds, of a light gray color, which came through the window of the toilet-room of the car. There was some black discoloration on the rock, and some fine pieces of coal came through the window at the same time with the stone. The plaintiff was of the opinion that his injury was received when the train was passing the coal-chute, giving as a reason that he could tell where he was by the rolling of the train. The railroad company introduced its conductor, who testified that the plaintiff made complaint, at the time, of some one having thrown a rock through the window, striking him upon his hand. Shortly after the occurrence the plaintiff wrote to an official of the railroad company a letter in which he stated that he was hurt by a rock which came through the toilet-room window, and that he knew that the railroad company was not to blame. The engineer testified that he was familiar with the coal-chute, and noticed nothing unusual as he passed by it; the lights of his engine were sufficiently

high to enable him to see any projection of the coal dump-carts, and he noticed no such projection; it is the custom for the dump-carts to be kept back from the guard-rail or side of the chute when not in use, and any projection of them over the road would have been very unusual and would have impressed itself upon him. The fireman testified that he did not notice anything unusual at the coal-chute. A civil engineer testified that he made a drawing of a cross-section of the coal-chute. The upright posts which support the floor on which the coal dump-carts are placed are five inches by eleven inches, and are placed ten feet apart, and so located as to be one foot and eight inches from the side of a passing passenger-train. The dump-carts have a door in the front part, which remains closed when loaded, and no coal can come out until these doors are opened by means of a lever and the carts tipped over; this process depresses the apron which is in front of the cart, and which serves to guide the coal when being emptied into the tender of an engine.

*Cumming & Hull, E. P. Davis,* and *M. L. Felts,* for plaintiff in error. *E. T. Shurley, L. D. McGregor,* and *E. R. Hill,* contra.

Evans, P. J. (After stating the facts.) Whenever a passenger is injured by the running of the cars of a railroad company or by a person in the employment and service of the company, a prima facie case is made out on proof of the injury occurring in that way. Civil Code (1910), § 2780. But, before the statutory presumption of negligence can arise, it must appear that the injury is attributable to the running of the cars or to the act of some person in the service of the company. The projection of a rock through the window of a moving train can not be attributable to the running of the train, unless some causal connection is shown. The plaintiff in his petition attempted to connect the running of the train with the projection of the rock through the window, by alleging that it was in a coal dump-cart on a chute negligently left so that the apron of the dump-cart projected over the train, and that the rock was jarred from the apron by the passing train. We think that the proof is too inconclusive to support this theory, or to show any causal connection between the projection of the rock through the window and the running of the train; and that the verdict is without evidence to support it.

*Judgment reversed. All the Justices concur.*